UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ANTHONY LUNDY, *et al.,*

Petitioners,

v.

DARIN BALAAM, *et al.,*

Respondents.

Case No. 3:21-cv-00267-MMD-WGC

ORDER

## I.    SUMMARY

In this represented Indian Civil Rights Act ("ICRA") habeas matter under 25 U.S.C. § 1303, Petitioners Anthony Lundy, Curtis Cloud, and Justin Saldana (referenced herein individually by their respective last name) challenge, *inter alia*, their continued pretrial detention by Respondent Sheriff Darin Balaam (the "Sheriff") on behalf of the Washoe Tribe of Nevada and California (the "Tribe" or the "Washoe Tribe") and in particular the alleged cash-only bail required for release by the Washoe Tribal Court (the "Tribal Court"). Petitioners also names as Respondent Tribal Chairperson Serrell Smokey ("Chairperson Smokey" or the "Tribal Respondent"). The matter comes before the Court following the filing of a Response (ECF No. 19) by the Tribal Respondent and a Traverse (ECF No. 20) by Petitioners, as well as on Petitioners' pending emergency motion for a temporary restraining order (ECF No. 2). For the reasons discussed herein, the Court dismisses the Petition (ECF No. 1) without prejudice for lack of full exhaustion of tribal judicial remedies.

///

///

///

## II.    BACKGROUND

### A. Overview

While, as discussed further below, the underlying particulars vary with each Petitioner, they alleged in the Petition in broad brush, *inter alia*, that: (a) each is being held on behalf of the Tribe as a pretrial detainee on allegedly misdemeanor charges with a cash-only bail requirement that each one is unable to satisfy, particularly where allegedly no bond agencies will accept bonds in a tribal court matter; (b) Petitioners thereby have remained and will remain detained indefinitely because jury trials have been postponed indefinitely in the Tribal Court due to pandemic concerns; (c) Tribal Court authorities allegedly have used the situation to try to pressure Petitioners to waive their right to a jury trial and accept a bench trial instead; and (d) they have no effective remedy of appellate review in the tribal courts because the tribal appellate court allegedly is not an actually functioning judicial body. (ECF No. 1 at 2-12.)

The parties, separately or together, allege the following regarding each respective Petitioner, their tribal court cases and the bail amount set.[1]

### B. Petitioner Anthony Lundy's Tribal Court Cases and Bail

Petitioners allege that Lundy is a member of the Tribe. (ECF No. 20 at 6.)

According to the Tribal Respondent and/or copies of Tribal Court records presented: (1) Lundy was convicted in April 2020 in Tribal Court Case No. CR-WT-19-047 of disorderly conduct and in No. CR-WT-19-048 for battery allegedly of his grandmother; (2) in No. CR-WT-19-047, he was given a 90-day suspended sentence and placed on probation for 12 months; and in No. CR-WT-19-048, he was sentenced to 180 days consecutive to the sentence in the other case, received credit for time served, and

---

[1]The Court does not suggest that Petitioners admit, *inter alia*, the allegations in the charging instruments and in the referenced tribal court proceedings. Petitioners specifically contest, *inter alia*, whether "cash-only bail has been set in an amount they can afford to pay." (ECF No. 20 at 12.) In all events, in summarizing assertions of fact, allegations, and/or argument by the parties and/or in the tribal courts, the Court makes no findings of fact or credibility determinations. The Court summarizes the same solely as background to the issues presented.

the remaining 128 days was suspended "in lieu of 12-month probation;" (3) Lundy thereafter failed to appear for three required monthly probation review hearings, and the Tribal Court issued a bench warrant on February 3, 2021; (4) Lundy was charged in No. CR-WT-21-010, with two counts of battery on a tribal police officer and one count of interfering with law enforcement procedures, "*i.e.,* resisting arrest" in connection with his arrest on the bench warrant in late February 2021; (5) these offenses allegedly occurred while Lundy was on probation in the two earlier cases, and following the three failures to appear for probation review hearings; and (6) on February 24, 2021, the Tribal Court initially set a $5,000.00 cash bail, but the court reduced the bail to $2,500.00 after a hearing on Lundy's April 28, 2021, request for a reduction in bail. (ECF No. 19 at 3-4.)[2]

**C. Petitioner Curtis Cloud's Tribal Court Cases and Bail**

Petitioners allege that Cloud is not a member of the Washoe Tribe and instead is an enrolled citizen of the Sisseton-Wahpeton Sioux Tribe in South Dakota.[3] (ECF No. 1 at 25.)

According to the Tribal Respondent and/or copies of Tribal Court records presented: (1) Cloud was convicted in October 2020 in No. CR-WT-20-023 of theft and a "30-day sentence was suspended in lieu of 9-month probation;" (2) Cloud was charged in or around December 2020, while on probation, in No. CR-WT-20-062, with battery and possession of methamphetamine, with the battery allegedly having been committed on his intimate partner; (3) Cloud initially was released on his own recognizance ("OR release") in connection with No. CR-WT-20-062 and was ordered to have no contact with

---

[2]Per statute, the maximum punishment that can be imposed by a tribe for any offense is imprisonment for one year, a $5,000 fine, or both, subject to limited exceptions permitting a maximum punishment of imprisonment for three years, a $15,000 fine, or both. *See* 25 U.S.C. § 1302(a)(7)(B)-(C) & (b).

The Tribal Respondent contends that an offense or offenses charged against at least Lundy and Saldana would be considered felony level offenses when charged by federal and/or Nevada state authorities. (ECF No. 19 at 12 & nn. 5 & 6; *id.* at 14.)

[3]Perhaps now the Sisseton Wahpeton Oyate of the Lake Traverse Reservation. *See* https://en.wikipedia.org/wiki/Sisseton_Wahpeton_Oyate (retrieved July 2021).

the alleged victim pending trial; (4) however, Cloud failed to appear at a pretrial hearing on April 14, 2021; and the Tribal Court issued a bench warrant; (5) on April 15, 2021, Cloud was arrested on the bench warrant as well as on new offenses that he allegedly committed while on probation in connection with No. CR-WT-20-023 and on OR release subject to the no-contact condition in connection with No. CR-WT-20-062; (6) Cloud thereupon was charged in No. CR-WT-21-021 with disorderly conduct and another battery allegedly on his intimate partner, an alleged violation of also the no-contact order, including allegations that he threatened to, *inter alia*, burn down the recreational vehicle in which the victim lived; and (7) Cloud was released on his OR in No. CR-WT-21-021 but, following upon the new charges, the Tribal Court revoked Cloud's earlier OR release in No. CR-WT-20-062 and set a $1,000.00 cash bail. (ECF No. 19 at 4-5 & 12-13; *see also* ECF No. 1 at 50-51; ECF No. 19-3 at 2-3.)

### D. Petitioner Justin Saldana's Tribal Court Cases and Bail

Petitioners and the Tribal Respondent allege that Saldana is not a member of the Washoe Tribe and instead is a member of the Lac du Flambeau Band of Lake Superior Chippewa located within the state of Wisconsin. (ECF No. 1 at 25; ECF No. 19 at 14; ECF No. 20 at 5.)

According to the Tribal Respondent and/or copies of Tribal Court records presented: (1) Saldana has two pending cases in the Tribal Court with the alleged victim allegedly being his intimate partner, with whom he has a child; (2) in No. CR-WT-21-033, Saldana is charged with having committed disorderly conduct, aggravated trespass, and criminal mischief on or about March 10, 2021, based on Saldana allegedly damaging the victim's front door by kicking the door and/or stabbing the door with a knife; (3) Saldana allegedly left the scene before officers arrived and thus was not arrested at that time; (4) in No. CR-WT-21-028, Saldana is charged with having committed domestic violence battery, unlawful restraint, assault with a deadly weapon, and aggravated stalking on or about May 9, 2021, based on Saldana allegedly: (a) punching, hitting, kneeing and/or kicking the victim numerous times on the head, arms and/or legs causing fracture(s),

bruising, and/or lacerations to her face, head and/or body; (b) placing his hands around her neck and choking her; (c) holding a knife to her throat, neck and/or stomach; and (d) causing her to feel terrorized, frightened and/or intimidated and placing her in reasonable fear of death or substantial bodily harm; (5) on May 12, 2021, the Tribal Court set bail at $2,500.00 in No. CR-WT-21-033 and $8,500.00 in No. CR-WT-21-028, for total $11,000.00 cash bail, with the order expressly being "without prejudice to bring a further bail hearing in future;"[4] (6) the alleged victim requested a domestic violence protective order, alleging that she was scared and feared for her safety, which the Tribal Court granted also on May 12, 2021; (7) allegedly the sole reason for Saldana being within the tribal jurisdiction is to visit his child; and he allegedly otherwise has no family, employment, permanent residence, vehicle registration, land ownership or other community ties to the tribal jurisdiction; and (8) the Tribe has no extradition agreement with either the State of Wisconsin or the Lac du Flambeau Band of Lake Superior Chippewa. (ECF No. 19 at 5 & 13-14; *see also* ECF No. 1 at 52-58.)

**E. Tribal Emergency COVID-19 Orders and Petitioners' Trial Settings**

ICRA assures both a right to a jury trial on a tribal offense punishable by imprisonment and a right to a speedy and public trial. *See* 25 U.S.C. § 1302(a)(6) & (10).

The relevant tribal rule provides that defendants have the right to a speedy and public trial within 180 days of arraignment. (*See, e.g.*, ECF No. 19-4 at 2.)

In response to the COVID-19 pandemic, the Washoe Tribal Council and the Tribal Court collectively issued several emergency provisions, including provisions on March 16 and 17, 2020, suspending both the above 180-day rule and the holding of jury trials. (*See* ECF No. 19-4; ECF No. 19-5 at 9, 15.)

The Tribal Respondent asserts that trial is set in Lundy's pending cases on August 16, 2021; on Cloud's pending cases on October 18, 2021; and on Saldana's two cases separately on December 9, 2021, and January 6, 2022. Respondent asserts that: (1)

---

[4](ECF No. 1 at 53.)

5

"[a]lthough the Washoe Tribe and Tribal Court *have not declared a full opening of tribal offices and tribal court*, the court is setting jury trials *in anticipation of dates the court will be fully open* and members of the tribe (jurors, court staff, bailiffs, witnesses, attorneys, defendants, police officers) can safely return to the tribal court and participate in jury trials;" (2) the Tribal Court has set ten other jury trials in addition to the Petitioner's respective trials, "with Lundy's the first to go on August 16, 2021;" (3) trials have not been set in July 2021 at the request of defense counsel for most defendants, who is preparing for the Nevada bar exam; and (4) no trials have been set in September and early October because the Tribal Court will be closed to move into a new tribal court building. (ECF No. 19 at 4-5, 18-19 (emphasis added).)

Petitioners urge that the Tribal Respondent's "recitation of the jury trial dates for Petitioners is misleading because the Tribe has not lifted its state of emergency," that "it is intentionally confusing to state that Anthony Lundy will have a jury trial on August 16 while simultaneously suspending all jury trials," and that Respondent "failed to advise the Court of the suspension of all jury trials when reciting the Petitioners' trial dates." (ECF No. 20 at 2-3; *but cf.* ECF No. 19 at 16-17; ECF No. 19-4; ECF No. 19-5 at 9, 15.)

**F. Petitioners' Tribal Court Habeas Petition**

On May 21, 2021, Petitioners filed a joint habeas petition in the Tribal Court presenting substantially the same claims, allegations and arguments (as applicable through that date) as they later presented in the federal petition. Petitioners named as respondents the Sheriff and Chairperson Smokey as well as the Sheriff's detention captain and all eleven representatives serving with Smokey on the Tribal Council. The petition was purportedly served only via email. (ECF No. 1 at 14-22.)

Petitioners allege that Lundy has been detained since February 17, 2021, Cloud since April 15, 2021, and Saldana since May 9, 2021. (ECF No. 1 at 4-6.) Based on these allegations, Lundy, Cloud and Saldana had been detained 93, 36 and 12 days respectively at the time of the filing of the tribal court habeas petition.

///

Three days after the filing of the petition, on May 24, 2021, the Tribal Court issued an order dismissing the petition without prejudice to Lundy, Cloud and Saldana each filing separate individual petitions correcting the procedural deficiencies identified by the court in its order. The Tribal Court held, *inter alia*, that: (1) the petition had not been properly served because email service was not permitted under the relevant rules: (2) the petition was not verified as required by the same; and (3) the petitioners (referred to by the court as the defendants, in reference to the original criminal proceedings) were not similarly situated and thus were improperly joined because: (a) Cloud and Saldana were not members of the Washoe Tribe and thus were not afforded all rights accorded to Lundy under the tribal constitution; (b) Lundy and Cloud had no-bail holds in one case each for probation revocation hearings (with each electing to hold the same concurrently with a jury trial setting) whereas Saldana was held on only pretrial bail in both of his two cases; and (c) Lundy and Cloud each further had an OR release order in one of their respective cases. (ECF No. 1 at 23-27; *see also* ECF No. 17-1 at 3-4; ECF No. 19 at 7-8, 18.)[5]

**G. Petitioners' Emergency Inter-Tribal Appeal**

Three days later, on Thursday, May 27, 2021, Petitioners filed a "Notice of Emergency Appeal to InterTribal Court of Appeals Nevada" in the Tribal Court. Service of the notice of appeal once again purportedly was effected by email. Over and above functioning as a notice of appeal, the filing set forth six pages of principally single-spaced legal and factual argument seeking to support Petitioners' request for emergency appellate relief. (ECF No. 1, at 28-36.)

Two weeks later, on Thursday, June 10, 2021, Petitioners filed the instant Petition in this Court. With regard specifically to the emergency appeal, Petitioners alleged that: (1) "the Inter-Tribal Court of Appeals is not functioning at all;" (2) "Petitioners are therefore

---

[5]The copy of the Tribal Court order attached with the Petition appears to be incomplete and further includes a duplicate page, suggesting a clerical copying error when the exhibit was prepared for filing. The content of the Tribal Court order is not disputed by the parties and further is to relevant extent summarized by the inter-tribal appellate court order.

unable to have their appeal rudimentarily processed, much less adjudicated;" and (3) "the Petitioners only forum for review of the legality of their detention under the Indian Civil Rights Act is in this Court." (ECF No. 1 at 4.) Petitioners elaborated that: (1) "Petitioners' on-line search for the Inter-Tribal Court of Appeals consistently returns to a blank page (except for a small photograph of Charles Dressler in the sidebar) on the Inter-Tribal Council website;" (2) "Petitioners . . . also contacted the Bureau of Indian Affairs (["]BIA["]) for the Western Region [by email] to determine if that appellate body might accept their appeal" but ""[t]he BIA court clerk stated [by return email] that the BIA does not accept appeals from the Washoe Tribal Court, and she does not know who does;" and (3) "[t]he court of appeals required by the Washoe Tribal Code (The Inter-Tribal Court of Appeals of Nevada) does not exist, except in name, and no other court will accept the Petitioners' appeal." (*Id.* at 8.)[6]

---

[6]Petitioners' alleged June 3, 2021, email referenced in the text does not itself indicate the addressee's office, role or employing division within the BIA. In her alleged response, she referred to herself as a Tribal Government Specialist with the Southern Plains Region for the BIA, in Anadarko, Oklahoma. (ECF No. 1 at 63-65.) Nothing in the alleged email exchange in the record would reflect that the particular addressee's lack of knowledge regarding appellate remedies vis-à-vis a habeas proceeding in the Washoe Tribal Court within Nevada necessarily would signify that there was no functioning appellate court available.

Petitioners also attached with the Petition a June 2, 2021, purported email sent to "info@itcn.org" reflecting that counsel had called the appellate court twice, was trying to determine whether there was a court coordinator handling the emergency appeal and was requesting a prompt response because Petitioners were in custody. (*Id.* at 60-61.)

The material presented does not affirmatively reflect that Petitioners contacted the Tribal Court clerk, *i.e.,* the lower court clerk, directly to inquire as to: (a) whether the appeal(s) had been docketed and transmitted to the appellate court; and (b) who to contact with the appellate court to inquire further on status and how to contact them.

In all events, as reflected in the text that follows, the appellate court in fact was functioning and issued a decision and order on Petitioners' emergency appeal(s) on June 21, 2021. However, Petitioners' own efforts to contact the appellate court and perhaps other officials *ex parte* regarding the processing of the appeal does pertain to argument by Petitioners on the exhaustion issue, as discussed further *infra*.

Finally, copies of alleged emails are neither self-authenticating nor necessarily competent evidence of factual assertions made therein. The alleged emails have not been

On June 21, 2021, the Inter-Tribal Court of Appeals of Nevada (the "Inter-Tribal Appeals Court") issued a Decision and Order on the pending emergency appeal. The court noted that there were a number of alleged procedural defects and unresolved defenses vis-à-vis the tribal habeas petition, including that "it may be that habeas corpus is not available since Appellants' remedies, if any, should only be pursued in the underlying criminal matters." (ECF No. 17-1 at 4.) The court did not reach these issues, however, because "the issue of consolidation of actions is dispositive of this appeal." (*Id.*)

The Inter-Tribal Appeals Court held as follows on the issue of consolidation or joinder, while expressly eschewing any holding on the merits of the underlying claims:

> The trial court has broad discretion to consolidate actions. *Nalder v. Eighth Judicial District Court*, 462 P.3d 677, 684 (Nevada, 2020) (citing a similar federal rule). We review *de novo* the lower court's ruling on questions of law. *In re: Padilla Estate,* ITCAN/AC-CV-18-006, 2 (ITCAN, 2018). Consolidation is appropriate when actions involve common questions of law or fact. *Liberty Mutual Insurance Group v. Panelized Structures, Inc.*, 2012 WL 13048972 (D. Nevada, 2012). The voluminous record before the trial court for each of Appellant's criminal cases is clear: claims and defenses of the parties are dissimilar and joinder in one action is therefore inappropriate. The trial court's order of dismissal on this basis is therefore affirmed.
>
> This Court emphasizes that its disposition addresses one and only one underlying procedural issue, that joinder and consolidation of these three actions is inappropriate. These cases must be filed and tried separately. This Court's decision is not a substantive ruling on the merits of any claim or defense, nor do we express any opinion regarding any claim and defense, whether habeas corpus is an appropriate remedy in place of proceeding in the underlying criminal cases, or whether any party-respondent is properly joined or subject to the Court's jurisdiction. These are matters best left to the trial court in the first instance.

(*Id.*)

The appeals court further spoke, however, to the concern underlying the emergency appeal—Petitioners' continued detention:

---

properly authenticated, and the factual assertions therein have not been supported by competent evidence. The Petition further was not verified as required by 28 U.S.C. § 2242 as to the assertions therein. Particularly given, *inter alia*, that Petitioners were incorrect regarding the functionality of the inter-tribal appellate court, evidentiary requirements regarding authenticity, competence and personal knowledge remain important.

The trial court must promptly dispose of all claims and defenses in refiled separate actions, including motions for pretrial release. These matters must be litigated on an expedited basis because Appellants are in custody. This Court provides minimal direction of this process which is set out in the Order on Appeal. There are at least two reasons for doing so. Appellants are in custody. Some appear to have languished for a long period of time. Whether they may be freed pending trial is of the utmost importance. These matters have been addressed by the lower court to some extent in the criminal cases. However, the filing of a new case entitles Appellants to revisit their custodial situation. And the trial court may rule on custody matters in any case, *sua sponte*. Second, it is apparent that these cases may be back before this Court. We therefore exercise our discretion to briefly set out the procedure in which the lower court must process certain matters in each case. . . . .

(*Id.* at 4-5 (ending citations omitted).)

The appeals court accordingly ordered, *inter alia*, that: (1) the trial court order of dismissal was affirmed "without prejudice to Appellants' right on remand to file and pursue their claims in separate actions;" (2) on the remand, "Appellants may file their separate actions no later than twenty (20) days of the date of this Decision and Order;" (3) "[f]or each refiled matter, the trial court shall expedite and dispose of all claims and defenses with proper findings of fact, conclusions of law and final judgments within sixty (60) days of the refiling;" and (4)(a) "with the refiling of separate actions Appellant in each case must file a motion addressing pretrial release from custody and all conditions attendant thereto;" (b) "[t]he Court may also rule on custody matters *sua sponte*," and (c) "Appellants may elect to address custody and release in any pending criminal case in which they are parties since this may be an efficacious procedure to resolve their status." The appeals court further retained "jurisdiction to entertain interlocutory appeals from lower court orders pertaining to custody and release of Appellants in any case," or to enforce its mandate. (*Id.* at 5.)

## H. Federal Proceedings

As noted, this action was filed on June 10, 2021, during the pendency of Petitioners' emergency appeal, premised in part on there being no functioning tribal appellate court. Petitioners have moved herein for a temporary restraining order ("TRO") directing their release on their own recognizance until bail hearings are held in the Tribal

Court "that considers all alternatives to cash-only bail; and, if cash-only bail is set, then it must be set in and amount the Movants can pay." (ECF No. 2 at 9.)

While efforts to give actual notice of the TRO motion were made, Petitioners apparently sought to effect service of the Petition via email, as in the Tribal Court and Inter-Tribal Appeals Court. (*See* ECF No. 2 at 23.) This Court, *inter alia*, directed proper formal service under Rule 4 of the Federal Rules of Civil Procedure and a prompt response following service as per the procedures outlined in 28 U.S.C. § 2243.

The Sheriff was served promptly and filed a motion to dismiss the Sheriff as a respondent, which the Court denied. When the initial return of service as to Chairperson Smokey appeared to reflect that he still might be expeditiously served, the Court directed the filing of a supplemental return of service either reflecting service or establishing the futility of further efforts. (ECF Nos. 11-16.)

Chairperson Smokey was promptly served thereafter and filed a Response that, *inter alia*, challenged whether tribal judicial remedies had been fully exhausted. Petitioners filed a Traverse that, *inter alia*, responded to the exhaustion defense.[7] The matter thus is properly postured for decision on, *inter alia*, the exhaustion issue.

## III.   GOVERNING LAW

Native American tribes retain limited sovereignty, including sovereign immunity from suit. A Native American in what is termed "Indian country" in statutory law generally thus has no protection under the Constitution vis-à-vis action by a tribe and may not sue the tribe in federal court. However, in the ICRA, Congress both adopted a statutorily-created limited bill of rights in 25 USC §1302 and allowed for a writ of habeas corpus to be brought under 25 U.S.C. §1303 as the exclusive means to challenge tribal detention in federal court. *See generally Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55-72 (1978);

---

[7]A traverse more typically is referred to currently as a reply in federal habeas practice. *See* Rule 5(e) of the Rules Governing Section 2254 Cases (the "Habeas Rules"). While the Court may utilize the Habeas Rules in other types of habeas proceedings in its discretion pursuant to Habeas Rule 1(b), the Court has followed Petitioners' nomenclature in this particular regard.

*(Russell) Means v. Navajo Nation*, 432 F.3d 924, 930, 932 & 935 (9th Cir. 2005); *see also McGirt v. Oklahoma*, 140 S. Ct. 2452, 2459 (2020) (regarding terminology). That statutory bill of rights includes, *inter alia*, excessive bail, speedy trial, and jury trial protections. *See* 25 USC §1302(6), (7)(A) & (10).

The §1303 habeas remedy, however, generally is subject to a prudential exhaustion requirement. *See. e.g., Selam v. Warm Springs Tribal Correctional Facility*, 134 F.3d 948, 953 (9th Cir. 1998). The principles governing the application of this exhaustion requirement in tribal habeas cases under §1303 are drawn from general tribal exhaustion case law arising in a wide variety of contexts, including general civil litigation. *See, e.g.*, *id.* (drawing governing principles from prior Supreme Court tribal exhaustion law in general civil litigation). Under that caselaw, non-exhaustion does not deprive the federal court of jurisdiction; but full exhaustion of available tribal remedies nonetheless is a prerequisite to a federal court's exercise of jurisdiction under §1303. *See, e.g.*, *Alvarez v. Lopez*, 835 F.3d 1024, 1027 (9th Cir. 2016) (§ 1303 habeas); *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013) ("*Grand Canyon Skywalk*").

Considerations of comity to the sovereign tribes and a policy of facilitating tribal self-government has led the Supreme Court to strongly discourage federal courts from assuming jurisdiction over unexhausted claims. *See, e.g.*, *Selam*, 134 F.3d at 953. This "'federal policy of promoting tribal self-government encompasses the development of the entire trial court system, including appellate courts,'" as a federal court's exercise of jurisdiction over unexhausted claims "'can impair the authority of tribal courts.'" *Id.* (quoting prior Supreme Court authority). Generally, a federal court thus must figuratively stay its hand unless and until the tribal courts in the first instance have "'had a full opportunity . . . to rectify any errors [they] may have made.'" *Id.* (same).

Exhaustion is not an inflexible requirement, however; and the district court must engage in a balancing process in which it weighs "'the need to preserve the cultural identity of the tribal courts by strengthening the authority of the tribal courts, against the

need to immediately adjudicate alleged deprivations of individual rights.'" *Id.* (quoting prior Ninth Circuit authority).

The balance will shift toward excusing the exhaustion requirement where, *inter alia*: (1) the tribal courts' procedures are not consistent with ICRA; (2) exhaustion would be futile; or (3) the tribal courts offer no adequate remedy. *See, e.g.*, *id.*

## IV.    DISCUSSION

### A. Exhaustion by Members of Other Tribes

On a potentially threshold issue in part, Petitioners contend that Cloud and Saldana are not required to exhaust tribal remedies because they are not members of the Washoe Tribe and are members instead of other tribes. Petitioners rely on language in *Selam, supra*, that states: "'[W]hen a tribal court attempts to exercise criminal jurisdiction over a person not a member of a tribe, no requirement of exhaustion need be enforced.'" 134 F.3d at 954 (quoting prior authority discussed further *infra*). (ECF No. 20 at 5-6.)

As backdrop, the Supreme Court held in *Duro v. Reina*, 495 U.S. 676 (1990), that the residual inherent sovereignty retained by tribes extended to the exercise of criminal jurisdiction only over the prosecuting tribe's members and not also over members of other tribes allegedly committing offenses within the tribe's territorial jurisdiction. Congress immediately disagreed. In 1990 amendments to ICRA, Congress affirmed its view that inherent tribal sovereignty instead did extend to the exercise of criminal jurisdiction over members of other tribes within the prosecuting tribe's territorial jurisdiction. Congress adopted positive legislation reflecting its view of tribal sovereignty. *See* 25 U.S.C. § 1301(2); *see also generally United States v. Lara*, 541 U.S. 193, 197-98 & 199 (2004); *United States v. Enas*, 255 F.3d 662, 668-71 (9th Cir. 2001) (*en banc*). Two branches of the federal government thus had reached diametrically opposed conclusions regarding inherent tribal sovereignty vis-à-vis criminal jurisdiction over members of other tribes.

In its 2004 decision in *United States v. Lara*, the Supreme Court held that—due to, *inter alia*, Congress' plenary authority over Indian matters under the Constitution— Congress could, as phrased by the high court, "relax" restrictions that previously had been

imposed on inherent tribal sovereignty and "restore" aspects of that sovereignty. 541 U.S. at 200-07, 210. A tribal conviction of a nonmember Indian thus did not give rise to double jeopardy protection against a following federal prosecution because the conviction was obtained via the tribe's inherent sovereignty as opposed to merely federal authority delegated by Congress in the 1990 amendments to ICRA. The dual sovereignty principle thus applied, notwithstanding the Supreme Court's earlier holding to the contrary in *Duro* regarding the reach then of retained inherent tribal sovereignty. *See id.*, at 197-99, 210. Congress' view of inherent tribal sovereignty accordingly was the one that ultimately prevailed over that of the Supreme Court in *Duro* after the 1990 amendments to ICRA.

The Ninth Circuit similarly has concluded *en banc* that the Congressional view prevailed in its 2001 decision in *United States v. Enas*, following a somewhat different analysis. *See* 255 F.3d at 673-75.

The language relied upon by Petitioners here originated in the 1995 Ninth Circuit decision in *Wetsit v. Stafne*, 44 F.3d 823 (9th Cir. 1995). In *Wetsit*, the petitioner was a member of the prosecuting tribe and was convicted of offenses within the reservation that occurred after the effective date of the 1990 amendments to ICRA. *See id.* at 824. The case thus had nothing to do with either a tribal assertion of criminal jurisdiction over a nonmember Indian or the exhaustion requirement as applied to a nonmember Indian seeking §1303 habeas relief. The panel nonetheless volunteered the following:

> *Exhaustion of Remedies.* Following the precedent of *Duro* we have examined the question of jurisdiction prior to the question of exhaustion of remedies. In *Duro* the federal district court entertained a habeas petition immediately after the tribal court had denied the petitioner's motion to dismiss. No objection to the petition was made on the ground that the petitioner had not exhausted his tribal remedies. We infer that when a tribal court attempts to exercise criminal jurisdiction over a person not a member of a tribe, no requirement of exhaustion need be enforced. It is different when the petitioner is a member of the tribe. Then, by virtue of her consent to tribal membership, she is bound to follow the procedures of the tribe if they are consistent with the Indian Civil Rights Act. Having failed to do so, she is not entitled to have her petition for habeas relief considered.

(*Id.* at 826 (italics in original).)

///

The *Wetsit* panel thus drew an inference—in what clearly was *dicta*—about exhaustion by nonmember Indians from the jurisdictional holding in *Duro* regarding the reach of tribal criminal jurisdiction that disregarded the 1990 amendments to ICRA. The *Wetsit* panel further did not have the benefit in 1995 of the 2001 and 2004 holdings respectively by the Ninth Circuit *en banc* and the Supreme Court establishing that Congress' contrary view of the extent of inherent tribal sovereignty and jurisdiction ultimately controlled over that of the Supreme Court in *Duro* following the 1990 amendments to ICRA. The intervening, and controlling, *Enas* and *Lara* decisions wholly undercut the *Duro*-based jurisdictional premise upon which the *Wetsit dicta* was based.

If it *had* been the law in 1992 that tribes could not exercise criminal jurisdiction over nonmember Indians, the *Wetsit dicta* then fully would have made sense under established principles regarding exhaustion of tribal judicial remedies. Under established law from which §1303 habeas exhaustion rules ultimately are derived, litigants who are not members of the tribe in question—including even non-Indians—must exhaust tribal remedies if the tribe's assertion of jurisdiction in the tribal proceedings is colorable or plausible. *See, e.g.*, *Window Rock Unified School District v. Reeves*, 861 F.3d 894, 897-98 (9th Cir. 2017) ("*Window Rock*"); *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004). If the tribe has no colorable or plausible basis for jurisdiction, then exhaustion is not required. *See Window Rock*, 861 F.3d at 898. The *Wetsit dicta* thus would have been wholly correct if *Duro* still had been good law in 1992 and the tribe could not have exercised criminal jurisdiction over a nonmember Indian. In 1992, however, tribes had criminal jurisdiction over nonmember Indians under the 1990 amendments to ICRA. The *Wetsit dicta* thus wholly conflicted with rather than found support in long-established principles regarding exhaustion of tribal remedies.

The same points apply fully to the 1998 *Selam* panel opinion, which quoted the same material from *Wetsit* that is quoted above in the text. *See* 134 F.3d at 954. As in *Wetsit*, the petitioner in *Selam* was a member of the prosecuting tribe convicted of offenses within that tribe's territorial jurisdiction that occurred after the effective date of

the 1990 amendments to ICRA. Any statement in *Selam* about criminal jurisdiction over, and exhaustion by, nonmember Indians thus was—just as in *Wetsit—dicta*. Further, any reliance on in turn *Wetsit*'s reliance on the jurisdictional holding in *Duro* was misplaced because that holding had been legislatively overruled by Congress. And, also similar to the *Wetsit dicta* initially, *Selam*'s repetition of that *dicta* was made without the benefit of the intervening controlling authority in *Enas* and *Lara*.

A panel repeated the *Wetsit dicta* once again in *(David) Means v. Northern Cheyenne Tribal Court*, 154 F.3d 941 (9th Cir. 1998), but the offense predated the 1990 ICRA amendments and the underlying jurisdictional holding in *Means* further was expressly overruled *en banc* in *Enas*. *See* 255 F.3d at 665, 671-72, 675 n.8. In *Means*, the prosecuting tribe asserted criminal jurisdiction over a nonmember Indian for offenses predating the effective date of the 1990 amendments. The panel held, *inter alia*, that Congress did not have the power to nullify *Duro* with respect to the inherent reach of tribal sovereignty vis-à-vis the assertion of criminal jurisdiction over nonmember Indians. *See Means*, 154 F.3d at 946-47; *see also Enas*, 255 F.3d at 671-72. Against the backdrop of this holding and a holding that the 1990 amendments did not apply retroactively, the *Means* panel repeated the *Wetsit dicta* that exhaustion was not required where a tribal court attempted to exercise jurisdiction over a nonmember Indian. *See* 154 F.3d at 949. This repetition of the *Wetsit dicta* arguably could be regarded to itself be *dicta* because the panel concluded that Means had exhausted tribal remedies. *See id.* Moreover, the panel opinion was not directed to a prosecution, such as the prosecution here, for offenses postdating the effective date of the 1990 amendments. In all events, however, the panel's underlying jurisdictional holding regarding Congress' authority to abrogate *Duro* regarding the reach of inherent tribal sovereignty was expressly overruled in *Enas*.[8]

---

[8]The *en banc* court did "not disturb, however, the holding in *Means* regarding retroactivity and the Ex Post Facto Clause." 255 F.3d at 675 n.8. These express limitations on the extent to which *Means* was overruled reinforce the inapplicability of any conclusion, regarding exhaustion or otherwise, in *Means* to this case, where the offenses instead indisputably are subject to the 1990 amendments to ICRA. Again, a conclusion that a nonmember Indian is not required to exhaust tribal remedies makes sense only

In the ensuing now approaching three decades since *Wetsit*, it does not appear that any court, including the Ninth Circuit, has followed the *Wetsit dicta* to hold that a nonmember Indian need not exhaust tribal remedies vis-à-vis a prosecution for offenses postdating the 1990 ICRA amendments where the prosecuting tribe, as here, thus indisputably has jurisdiction. The *Wetsit dicta* instead "has not been followed and has been criticized as 'without merit and incorrect.'" 1 F. Cohen, *Handbook of Federal Indian Law* § 9.09 (N. Newton ed. 2012) (quoting *Lyda v. Tah-Bone*, 962 F. Supp. 1434, 1435 (D. Utah 1997)); *see also (Russell) Means*, 432 F.3d at 928 (finding that the nonmember Indian exhausted tribal remedies on his jurisdictional challenge).

In sum, Petitioners rely on 26-year-old *dicta* that disregarded the legislative overruling of the Supreme Court authority, *Duro*, relied upon in the *dicta* and further did not have the benefit of the intervening *Enas* and *Lara* decisions confirming that *Duro* had been abrogated with regard to the ambit of inherent tribal sovereignty.

The Court thus does not view the *dicta* that originated in *Wetsit* as either binding on this Court vis-à-vis offenses postdating the 1990 amendments or as a correct statement of the law for that situation, particularly given the intervening controlling Ninth Circuit *en banc* and Supreme Court precedent respectively in *Enas* and *Lara*. The Court accordingly holds that Cloud and Saldana also must satisfy the exhaustion requirement.

**B. Petitioners Have Not Satisfied the Exhaustion Requirement**

Petitioners have not fully exhausted then-available tribal judicial remedies. Petitioners' effort to pursue a joint tribal habeas petition in the Tribal Court was found to be procedurally deficient by both that court and the Inter-Tribal Appeals Court. Both of those courts clearly set forth what they viewed to instead be procedurally proper avenues for Petitioners to expeditiously pursue their respective challenges to their continued

---

within a context where the prosecuting tribe clearly does not have criminal jurisdiction to prosecute a nonmember Indian. Following the 1990 amendments, *Enas*, and *Lara*, a tribe clearly has criminal jurisdiction to prosecute a nonmember Indian. Any conclusion stated in *Means* regarding the exhaustion requirement in a context not governed by the 1990 amendments has no application to a case instead subject to the amendments.

detention. Petitioners instead have proceeded to federal court, initially on what fairly quickly proved to be an incorrect assumption that there was no functioning appellate court hearing their emergency tribal appeal. Particularly following upon the Inter-Tribal Appeals Court decision and order, this Court can consider Petitioners' claims on the merits only by disregarding the fundamental principles of comity and respect for the sovereignty and self-governance of the Tribe and the tribal courts that undergird the prudential tribal exhaustion requirement. Those courts should be allowed the opportunity to consider, and potentially correct, the alleged violations of ICRA on challenges pursued instead via procedurally proper vehicles.

Weighing the need to strengthen the authority of the tribal courts against the need for immediate adjudication of the alleged deprivation of Petitioners' rights, the Court concludes that the balance leans substantially in favor of requiring full exhaustion in this case. While Petitioners' detention is continuing, the tribal courts clearly stand ready, and have stood ready since the dismissal of the original joint petition without prejudice, to hear their respective individual challenges to continued detention on cash-only bail. While, as discussed further *infra*, Petitioners disagree with the tribal courts' procedural holdings, it nonetheless always has been an integral principle vis-à-vis exhaustion in another sovereign's courts that the litigant generally must comply with that sovereign's procedural requirements for exhausting a claim.[9]

The Court makes the holding herein fully cognizant of the fact that Petitioners have filed an emergency motion for a TRO pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. They contend that they are being denied their rights under ICRA with every

---

[9] *Cf. Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance"); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (presentation of a claim in a procedural manner where the merits will not be considered absent special circumstances does not fairly present and exhaust a claim); *see also* 1 F. Cohen, *supra* (suggesting that procedural default doctrine principles from state habeas matters appropriately are followed in tribal habeas matters).

continuing day of detention. While the Court does not categorically rule out the application of Rule 65(b) in a habeas proceeding, the Court notes that the Federal Rules of Civil Procedure do not inexorably apply without qualification in habeas matters. *See, e.g.*, Habeas Rules 1(b) & 12. In habeas matters, including in habeas matters challenging pretrial detention such as here, the remedy more traditionally provided—on a successful claim on the merits—instead is a conditional grant of a writ of habeas corpus providing that the petitioner must be released if the error is not corrected within a specified time. *See, e.g.*, *Arevalo v. Hennessy*, 882 F.3d 763, 767-68 (9th Cir. 2018) (directing that the district court issue a conditional writ grant ordering the petitioner's release if a sufficient bail hearing was not provided within 14 days); *Harvest v. Castro*, 531 F.3d 737, 741-42 (9th Cir. 2008) (regarding conditional writ grants generally). The TRO remedy sought by Petitioners in contrast would direct their immediate release *until* a sufficient bail hearing is held, and further on a preliminary rather than a final determination on the merits in federal court. The nature of that sought remedy is not consistent with the manner in which relief traditionally is afforded in habeas via a conditional writ grant. This Court has proceeded with as much alacrity as possible, but it nonetheless has proceeded more in line with what is also expedited habeas procedure under 28 U.S.C. §2243 rather than a direct application necessarily of Rule 65(b).

In all events, Petitioners' invocation of Rule 65(b) most certainly does not override the requirement that Petitioners must have fully and fairly exhausted then-available tribal judicial remedies. They have not done so here.

## C. Petitioners Have Not Established an Exception to Exhaustion

Petitioners otherwise have not established the applicability of an exception to the exhaustion requirement that would tip the balance to instead excusing that requirement in this case. As discussed below, Petitioners disagree with various procedural actions by the tribal courts. Petitioners have not established, however, that those procedural actions, *inter alia*, are inconsistent with ICRA, render exhaustion futile, or deprive Petitioners of an adequate remedy in the tribal courts.

Petitioners contend specifically that the exhaustion requirement (if not instead actually satisfied as they contend it was) should be excused because: (1) in requiring separate petitions to be filed, the Tribal Court (thereafter upheld by the Inter-Tribal Appeals Court) allegedly refused to enforce tribal habeas rules and "invented an *ad hoc* procedure" using instead civil procedure rules, in order "to thwart" Petitioners; and (2) (a) the Inter-Tribal Appeals Court failed to respond to Petitioners and issued its decision and order with "no briefing schedule nor fair process of any kind . . . leading up to" the decision, "totally exclud[ing]" and "shutting out" Petitioners, while (b) at the same time "working hand in glove with Respondent" while the appeals court "communicated *ex parte* with Respondent's court." Petitioners contend that these alleged circumstances satisfy a bad faith exception to the exhaustion requirement under *Grand Canyon Skywalk, supra.* (ECF No. 1 at 30-31; ECF No. 20 at 4-7.)

Under *Grand Canyon Skywalk*, bad faith will excuse exhaustion if the tribal court's assertion of tribal jurisdiction is motivated by a desire to harass or the tribal court conducts the proceeding in bad faith. Alleged bad faith by a litigant in the proceeding, as opposed to by the tribal court itself, "will not suffice." 715 F.3d at 1201-02.

On its face, treating Petitioners' habeas proceeding in tribal court as a civil proceeding and applying civil procedure rules regarding matters such as verification, service, and joinder was neither novel nor indicative of bad faith. Habeas proceedings in federal court and Nevada state court constitute civil proceedings subject potentially to the application of general civil procedural rules. *See, e.g.*, Habeas Rule 12; NRS § 34.780(1). That is why, *inter alia*, this Court required service on Respondents under Rule 4 of the Federal Rules of Civil Procedure. Petitioners urge that, in contrast to federal and Nevada practice, Washoe Tribal Law and Order Code § 4-10-040 instead is "exclusive." (ECF No. 1 at 30-32.) Yet the material quoted from § 4-10-040 does not state that the provisions therein are "exclusive" of any other civil procedure rules potentially applicable to a tribal court habeas proceeding. (*Id.* at 31.) Nor does the section state that habeas petitioners have an unqualified right to join their claims in a single petition, and the language in fact

speaks only of a petitioner in the singular. In the final analysis, the Inter-Tribal Appeals Court, which affirmed on the joinder issue, is the final arbiter of tribal procedural law. *Cf. Rudin v. Myles*, 781 F.3d 1043, 1054 (9th Cir. 2014) (stating that state supreme court was final arbiter on state law procedural issue). While Petitioners read tribal procedural law differently than did the tribal courts, their disagreement with the tribal courts on the procedural issue does not establish any impropriety or bad faith.

Nor was the summary adjudication of Petitioner's emergency appeal, on its face, either novel or indicative of bad faith. Petitioners filed an appeal designated as an "emergency" appeal with six mostly single-spaced pages of detailed legal argument presenting their position as to why they believed immediate relief was needed. (ECF No. 1 at 28-36.) The Inter-Tribal Appeals Court responded reasonably expeditiously with a decision and order that, while affirming on the joinder issue, spoke extensively to Petitioners' core underlying desire for prompt consideration of their respective challenges to their continued detention. (*See* text, *supra*, at 9-10.) Under established Ninth Circuit law, "a tribe's summary adjudication of appeals does not by itself render appeals futile or remedies inadequate." *Selam*, 134 F.3d at 954. Rather, "'except to the extent demanded by . . . [ICRA], the structure and procedure of [tribal] courts may be determined by the tribes themselves.'" *Id.* (quoting prior authority). Here, Petitioners took the opportunity to present written argument in support of their emergency appeal and received a reasonably prompt adjudication that provided not insubstantial procedural relief, albeit not within a joint proceeding as they wished. Nothing in that situation indicates bad faith.

Finally, the sequence of forwarded emails upon which Petitioners rely does not establish bad faith by the tribal courts.[10]

The first five emails in the sequence, from June 17 and 18, 2021, are between Shannon Guerrero and Deserea Quintana. The first four of the five emails concern steps

---

[10]Petitioners and the Tribal Respondent both rely on the emails for different purposes, and the Court therefore takes their authenticity as a given for purposes of the present discussion.

being taken by Guerrero to gather the lower court record materials and transmit them via email attachments to the appeals court. In the fifth email, Quintana reports back to Guerrero that the justices had notified her that the cases were under review and were being processed, perhaps as confirmation that the appeals court had the record materials that it needed from the lower court to proceed with the appeal. (ECF No. 19-2.)

The Response identifies Guerrero as the "Washoe Tribal Court Clerk." (ECF No. 19 at 9.) That description is consistent with contemporaneous file stamps and such in the copies of tribal court materials filed by Petitioners that identify Guerrero as the Clerk of the Tribal Court. (*See* ECF No. 1 at 42-43, 46, 48-49, 51, 53, 54, 56, 57-58.) The Response identifies Quintana as the "ITCA Court Coordinator," whereas her emails list her position as "Executive Director" of the "Inter-Tribal Council of Nevada." (*Compare* ECF No. 19 at 9 *with* ECF No. 19-2 at 3.) It would appear from the subject matter of the emails, however, that Quintana's then specific function at the time indeed was in connection with clerical or administrative duties for the appeals court vis-à-vis the emergency appeal. Petitioners' counsel sent an email inquiry to a different email address also at "itcn.org" when attempting to contact the Inter-Tribal Appeals Court. (*See* text, *supra* at 8 & n.6.) It thus would appear to be undisputed that Quintana's organization was the contact organization for the appeals court. (*See also* ECF No. 1 at 8.)

There is nothing remarkable about such email communication between the clerical staff of a lower court and an appellate court with regard to the transmittal of the record on appeal. Communications of this nature and for this purpose between the clerks' offices of federal district courts and federal appeals courts are not uncommon and do not at all signify that either court is engaging in bad faith.

What was remarkable, however, was that on June 19, 2021, Guerrero forwarded the above sequence of emails to "WT Prosecutor." (ECF No. 19-2 at 2.) The Tribal Respondent six days later attached the email sequence to the June 25, 2021, Response in an effort to establish that the appeals court was functioning and that the appeal was

being processed. (ECF No. 19 at 2 & 9-10.)[11] Forwarding of such intra-judiciary clerk-to-clerk emails to a person identified with a litigant would be irregular within the federal system. That said, the lower court clerical employee's forwarding of the emails to the tribal prosecutor does not remotely suggest that the judges of the two courts were "working hand in glove with Respondent" and conducting the proceedings in bad faith. While the forwarding specifically of the clerk-to-clerk emails was perhaps irregular, an *ex parte* communication between a litigant and a court clerk regarding the status of a matter otherwise generally is neither improper nor indicative of bad faith, and certainly not of bad faith by a court's judges. Indeed, over two weeks earlier, Petitioners' counsel also sought to contact the appeals court on an *ex parte* basis regarding the status of the appeal, albeit without generating a response at that early juncture. (*See* ECF No. 1 at 7-8 & 60.)

The emails that were presented herein to demonstrate that the appeals court was functioning neither establish bad faith by the tribal courts nor warrant further inquiry.[12]

The Court therefore does not find that the bad faith exception applies to excuse the exhaustion requirement or that the exhaustion requirement otherwise should be excused in this case. *See also Grand Canyon Skywalk*, 715 F.3d at 1203 (stating that the

---

[11]Such an effort actually was unnecessary by that point because the Inter-Tribal Appeals Court already had issued a Decision and Order on June 21, 2021.

[12]Petitioners urge that the Tribal Respondent should be required to produce all *ex parte* communications with the appeals court. (ECF No. 20 at 5.) Nothing before the Court suggests that further inquiry on this collateral matter is warranted, would reasonably likely lead anywhere material to the exhaustion issue, or would be a prudent application of time and resources by the Court or the parties. The Court has seen enough with this particular record material to determine that prolonging the current federal litigation to pursue the peripheral matter of possible *ex parte* emails of this nature is unwarranted. Discovery otherwise is not available as a matter of right in habeas proceedings. *Cf.* Habeas Rule 6. For the foregoing reasons, the Court does not find that good cause for such discovery has been shown here (assuming for this discussion the propriety of such a request when embedded within a traverse rather than presented by separate motion).

23

futility exception "applies narrowly to only the most extreme cases," such as possibly a two-year delay or there being no functioning tribal court).[13]

The Court accordingly will dismiss the action without prejudice for lack of complete exhaustion. The Court finds that a dismissal without prejudice rather than a stay is appropriate as Petitioners will suffer no collateral prejudice from a dismissal rather than a stay, given that, *inter alia*, no adverse limitations period consequences are implicated.[14]

## V.  CONCLUSION

It is therefore ordered that Petitioners' emergency motion for a temporary restraining order (ECF No. 2) is denied.

It is further ordered that the Petition (ECF No. 1) is dismissed without prejudice for failure to fully exhaust available tribal judicial remedies.

///

///

///

///

///

///

///

---

[13]Petitioners' assertions that the Tribal Respondent is not being completely truthful about trial settings and that Respondent has not responded specifically to, *inter alia*, their allegations about being pressured to waive their jury trial rights do not lead to a different outcome on the exhaustion issue. Petitioners can pursue all such assertions in the tribal court proceedings outlined in the appeals court order if relief is timely sought. This Court notes, however, that, given the advance scheduling required, one possible approach to resuming jury trials after a pandemic-related suspension would be to set trials in advance before the suspension was actually finally lifted, in anticipation of the suspension being lifted. Waiting to *set* jury trials until the first day a jury trial could be *held*, *i.e.*, the first day the suspension officially is lifted, could result in further delay. In all events, such matters remain to be explored by the parties in the tribal courts if relief is timely sought.

[14]Neither this order nor any prior order herein reflects any determination, one way or the other, as to the merits on the detention issues in Petitioners' cases or any other issue, including joinder in federal court, not expressly addressed by the Court.

The Clerk of Court is directed to enter judgment accordingly and close this case.[15]

DATED THIS 9th Day of July 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[15]A certificate of appealability is not required in this context under 28 U.S.C. § 2253(c)(1) because, although the Court is issuing a final order, neither the detention challenged arises out of state process nor is this a proceeding under 28 U.S.C. § 2255. *See, e.g.*, *Forde v. U.S. Parole Commission*, 114 F.3d 878 (9th Cir. 1997); *see generally Wilson v. Belleque*, 554 F.3d 816, 824-25 (9th Cir. 2009).

Petitioners should note that failing to timely pursue the remedies outlined in the Inter-Tribal Appeals Court's June 21, 2021, decision and order (*see* text, *supra*, at 9-10) would not lead to exhaustion being excused via alleged futility. *See, e.g.*, *Selam*, 134 F.3d at 954 n.6; *see also* 1 F. Cohen, *supra* (stating that petitioners may not avoid exhaustion by waiting until the time to pursue an available tribal remedy has lapsed).

Finally, subject to proper invocation of Rules 59 and/or 60, any further federal habeas relief sought by Petitioners, following exhaustion of tribal judicial remedies or otherwise, must be pursued in a new action or actions under a new docket number or numbers. The Clerk's entry of judgment herein closes this action.